**UVEX SPORTS, INC.**

**INDEPENDENT SALES REPRESENTATIVE AGREEMENT**

**This Agreement** is effective as of **March 1, 2005**, between UVEX SPORTS, Inc., a Rhode Island corporation having its principal place of business at 31 Western Industrial Drive, Cranston, RI 02921 ("Company"), and **Tom Holt of Pacific Sales West**, a resident of **Federal Way, WA** ("Independent Sales Representative or "ISR").

**NOW THEREFORE**, in consideration of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and the mutual covenants contained herein, Company and ISR agree as follows:

I. **Exclusive Sales Representative.** Company hereby appoints ISR as the exclusive sales representative to promote, market and solicit orders for the Company's products identified on Exhibit A attached hereto (the Products) within and throughout the geographic territory and/or channels of distribution specifically identified on Exhibit B attached hereto (the Territory). ISR hereby accepts the appointment as Company's exclusive sales representative for the Territory and agrees to use its best efforts to promote, market and solicit orders for the Products in the Territory. ISR agrees that it shall not offer or sell any products or goods which, in the sole discretion of Company, are competitive with, the same as, or similar to any of the Products (Competing Products), or promote or advertise any such goods without Company's prior written consent, which consent shall not be unreasonably withheld; provided, however, ISR expressly understands and agrees that as an alternative to granting consent for the IRS to traffic in Competing Products, Company may immediate terminate this Agreement pursuant to Section X.

II. **ISR's Responsibilities.** ISR shall develop and submit the Company for approval a business plan for promoting the Products in the Territory through the use of on-site and retail promotions and merchandising activities (the Business Plan). Upon approval of the Business Plan by Company, ISR shall execute the Business Plan and in connection therewith ISR shall (i) coordinate and plan special events as requested by Company and will attend and participate in national and regional sales meetings and meetings as requested by Company Company Designated Events), (ii) attend the National Trade Show (S.I.A.) and other regional trade shows approved by Company and attended by ISR's customers, and (iii) perform such other administrative responsibilities as required by Company including the submission of monthly status reports. Company shall reimburse ISR for actual reasonable out of pocket expenses incurred by ISR in connection with Company Designated Events provided that (a) such expenses are of the nature and amount specified in Company's reimbursement policies and (b) ISR has provided Company with documentation of such expenses and submitted to Company such reasonable expense reimbursement forms as Company shall require. Except as expressly provided in this Section, ISR shall be solely responsible for any and all expenses incurred by ISR in connection with the performance of its services hereunder.

III. **Price and Terms of Sales.** Company shall have the absolute right to establish the prices, charges, terms and conditions governing the sale of Products, but agrees to consider the advice of ISR regarding the same. Company shall provide ISR from time to time a schedule of prices, charges, terms and conditions relating to the Products. ISR shall place all orders for Products with Company on such forms and in accordance with such procedures, as Company shall establish from time to time. Company shall have the right for any reason in its sole discretion to reject any order placed by ISR, including without limitations orders placed by customers whom Company in its judgment deems financially or otherwise unsuitable.

IV. **Sample Products.** ISR will purchase such samples and demonstration Products as specified by then applicable Company policy (theSample Products). Company shall invoice ISR for the original Sample Products and for subsequent orders of Sample Products placed by ISR. The Sample Products shall be the property of ISR and shall be maintained in good condition throughout the term of this Agreement. In the event that ISR has failed to pay Company for Sample Products within thirty (30) days after an invoice becomes due for the same has been issued to ISR, Company may, without further notice to ISR, deduct the amount of such invoice from any commission, draw or other amount due to ISR hereunder until the invoice is paid in full. In the event that Sample Products are stolen, ISR shall immediately file a police report with respect to such incident, a copy of which shall be delivered to Company. Company may but shall not be required to replace stolen Sample Products. ISR shall, at all times during the term of this Agreement, carry and maintain a policy of insurance covering the loss or theft of the Sample Products.

V. **Express Limits on Authority.** ISR will not, without Company's express written authority, directly or indirectly make any contract, offer or sign any agreement or contract on behalf of the Company, extend credit in Company's name, or do any act which in any way binds or purports to bind Company. ISR covenants and agrees that, when dealing with third parties, ISR will act in such a manner as to avoid any ambiguity or dispute as to the nature and extent of ISR's authority. In addition, ISR agrees to act in the best interest of Company, to exercise all reasonable care and skill and to perform ISR's duties in a competent, professional and faithful manner.

VI. **Commission.** (a) Subject to Section VI(b), Company will pay ISR a sales commission as outlined below, to be paid monthly less credits, returns, and delinquent receivable for all accounts in Territory. A receivable will be considered delinquent if not paid within (60) days after it becomes due, and the related commission will be deducted from ISR's next monthly commission check (unless the receivable is collected before issuance of the check). If commission is deducted because of a delinquent receivable and the receivable is later collected, Company will restore the commission to ISR in the next monthly check after collection; *provided, however,* that if the delinquent receivable is not collected within 120 days after it becomes due, ISR will have no right to receive commission on it, even if it is eventually collected. If a delinquent receivable is partially paid within 180 days after

becoming due, ISR will be entitled to partial commission, in proportion to the amount paid. Commission will be paid on or about the 15th of the month following shipment as follows:

I. **COSTCO**

| | |
|---|---|
| All regular price product for Costco Canada, UK, & USA | 8% |
| All promotional coupon rebate orders | 3%* |
| *paid on net price after rebate deductions | |
| Melanin Sunglasses | 10% |
| Melanin Readers no service | 10% |
| Melanin Readers with service | 15% |

b) If this Agreement is terminated by either party, the following policy will apply:

I. ISR will earn commission on product shipped on or prior to the date of termination if the customer makes payment on the invoice within the approved program period. Payment of earned commissions will be made within 15 days after the end of the month in which the customer makes payment on the invoice. If the customer does not make payment within 180 days of termination, ISR will not earn any commissions on the sale.

II. ISR will earn 75% of commissions on any bookings (i.e. future orders) on record as of the date of termination if shipment occurs within the approved booking program period, and the customer makes payment on the invoice within the approved program period whichever comes first. Payment of the above commissions will be made within 15 days after the end of the month in which the customer makes payment on the invoice.

VII. **Insurance and No Benefits.** ISR shall make such filings and take such action as may be required to qualify to do business under all applicable state and local laws in order to perform the services contemplated in this Agreement on behalf of Company. ISR shall be solely responsible for the payment of any and all taxes or other assessment levied by governments with respect to commissions paid to it under this Agreement. ISR further expressly acknowledges and agrees that ISR shall not be entitled to participate as an employee in or under any employee medical, health or other benefit plans of Company or to have other employment rights or benefits available to or enjoyed by employees of Company. ISR shall, at its own expense, maintain workers compensation or similar coverage under the applicable workers compensation laws within the Territory.

VIII. **Confidential Information.** ISR will not use or disclose any confidential information (as hereinafter defined) acquired as a result of this Agreement (or any preceding agreement) for any purpose except the purposes of this Agreement without Company's prior written consent,

and will not disclose any such information to third parties, or to ISR's agents or employees other than those who have a need to know confidential information in order to perform their responsibilities. ISR agrees to cause all of ISR's employees and agents having access to confidential information to agree, in writing, to maintain the confidentiality of all confidential information and not to use any such information for any purpose other than the purposes of this Agreement. Upon termination of this Agreement, ISR will forthwith return to Company all confidential information within ISR's possession, custody or control, together with all copies thereof and extracts there from within fifteen (15) days of termination. "Confidential information" means customer lists, prospect lists, methods of doing business, pricing information, processes, know-how, and any documents or other information designated or treated by Company as sensitive business information, to the extent provided by Company to ISR or acquired by ISR as a result of tiffs Agreement. The provisions of this Section VIII shall survive the termination of this Agreement for the maximum period permitted under applicable law. ISR recognizes that the violation by ISR or ISR's employees or agents of the covenants of this Paragraph VII would cause irreparable injury to Company for which money damages could not fully compensate. Accordingly, ISR agrees that in the event of the violation or threatened violation of this Section VIII by ISR or any of ISR's agents or employees, Company shall be entitled to seek injunctive or comparable relief against ISR (in addition to and not in lieu of any relief sought against agents or employees) in any court of competent jurisdiction. The parties understand and acknowledge that their presence is and will be required at times within the State of Rhode Island in order to perform their obligation under this Contract. As such, the parties further irrevocably submit to the personal jurisdiction of any such court for such purpose and waive any objection to venue or any claim of inconvenient forum or lack of in personam jurisdiction.

IX. **ISR's Obligations upon Termination.** Within 15 days of termination of this Agreement, ISR will return to Company all Products, related materials and equipment provided to ISR and all business records that relate to Company sales generated by ISR or that contain or constitute information. In addition, upon the termination of this Agreement, Company shall have an option, solely in the discretion of Company, to repurchase all of Sample Products then in the possession of ISR at the original price charged by Company to ISR provided that ISR has fully paid Company for such Sample Products and ISR has maintained such Sample Products in good condition. Company shall exercise its option by delivering written notice to ISR and ISR shall respond by delivering to Company, within thirty (30) days of the date of Company's notice, an inventory of Sample Products in its possession. Upon receipt of the invoice, Company shall arrange with ISR for the time and place upon which a mutual exchange shall occur wherein ISR delivers possession and title to the Sample Products to Company and Company pays ISR for the Sample Products as herein provided. If ISR refuses to sell the Sample Products to Company, ISR agrees that it shall be prohibited from using the Sample Products in any way for a period of sixty (60) months from the date of Company's notice exercising its repurchase option.

X. **Term of Agreement.** This Agreement shall be effective as of the date first set forth above and shall continue in effect until terminated by either party giving thirty (30) days written notice to the other with or without cause. In the event that this Agreement is terminated as

aforesaid, Company shall have no further obligation or liability to ISR whatsoever except for commissions calculated in accordance with Section VI hereof.

XI. **Non Assignment.** Company is relying upon the personal skills and abilities of ISR. Therefore, ISR may not assign any of the rights or responsibilities under this Agreement to any person or entity, without the prior written consent of the Company. Any attempted assignment in contravention of the preceding sentence shall be voided at the discretion of Company. This Agreement shall be binding upon, and inure to the benefit of, the parties and their respective personal or legal representatives, successors, and permitted assigns.

XII. **Independent Contractor Status.** Nothing in this Agreement is intended, nor shall it be construed, to establish an employer-employee relationship between the parties, or a joint venture or partnership for any purpose. The relationship between the parties shall be deemed for all purposes to be that of independently contracting parties and ISR will be solely responsible for any and all tax withholdings, estimated payments and similar obligations with respect to ISR's income.

XIII. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all previous agreements, arrangements and understandings, whether written or oral, with respect to the subject matter. No representation or statement not contained in-this Agreement shall be binding upon Company as a representation or otherwise.

XIV. **Amendments.** Except as otherwise expressly provided herein, this Agreement cannot be modified or amended except by a written instrument duly executed by the parties hereto.

XV. **Notices.** Any notices required or permitted to be given under this Agreement shall be in writing and shall be delivered in person, sent by certified mail (postage prepaid and with return receipt requested), or transmitted by facsimile the following respective addresses or to such other address as either arty may designate for itself by notice duly given:

**IF TO COMPANY:** Rhode Island
UVEX SPORTS Inc.
31 Western Industrial Drive
Cranston, RI 02921
FAX 401-464-4244

**IF TO ISR:**
Pacific Sales West, Inc.
1911 South West Campus Drive
#138
Federal Way, WA 98023
Tom Holt, President

Any notice so mailed shall be deemed received on the date indicated in the return receipt. Any notice sent by facsimile shall be deemed received upon confirmation of receipt. Delivery by Federal Express or other recognized courier service shall be deemed personal delivery.

XVI. **Waiver.** The failure of either party to enforce the provisions of this Agreement at any time shall not be construed to be a waiver of such provision or the right thereafter to enforce each and every provision hereof. No waiver by either party, express or implied, of any breach of any term, condition or obligation of this Agreement shall be construed as a waiver of any subsequent breach of the same term, condition or obligation, or as a waiver of any breach of any other term, condition or obligation hereof.

XVII. **Dispute Resolution.** Except as provided in Section VII, any disputes arising out of or relating to this Agreement, or concerning the validity, interpretation, breach, or violation or termination hereof, will be finally and conclusively settled by arbitration. The arbitration will be held in Providence, Rhode Island, pursuant to he commercial arbitration rules of the American Arbitration Association ("AAA") before a single arbitrator. The arbitrator will decide the claim on the basis of applicable legal principles and will have discretion to award costs and fees, including reasonable attorney's fees, to the prevailing party. It is agreed that the determination or award of the arbitrator may be entered as a judgment in any court sitting within the State of Rhode Island that has jurisdiction over the subject matter. The parties understand and acknowledge that their presence is and will be required at times within the State of Rhode Island in order to perform their obligation under this Agreement. As such, the parties further irrevocably submit to the personal jurisdiction of any such arbitrator and/or arbitration proceeding.

XVIII. **Governing Law.** This Agreement and any disputes relating hereto shall be governed by and construed in accordance with the internal laws of the State of Rhode Island, without regard to the conflict of law rules thereof.

**IN WITNESS WHEREOF,** the parties have executed this Agreement effective as of the day and year first above written.

Independent Sales Representative:

[signature]

Pacific Sales West, Inc.

Social Security #:

Federal Id #: 91-1204830

UVEX SPORTS, Inc.

By: [signature]

Carl Helmetag, President

**EXHIBIT A**

**PRODUCTS**

**Melanin Readers**

## EXHIBIT B

## TERRITORY

**Costco; other accounts may be added when needed**